***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is self-insured.
4. Plaintiff's average weekly wage was $517.63 at the time of her compensable injury by accident to her back.
5. Plaintiff's March 26, 2000 back injury claim was treated as a medical only claim in that plaintiff did not lose any time from work due to her injury until the time her job ended with defendant on June 30, 2000.
6. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
7. Industrial Commission forms were stipulated into evidence as Stipulated Exhibit 2.
8. Plaintiff's personnel file was stipulated into evidence as Stipulated Exhibit 3.
9. VOCA contract and documentation regarding turnover of facility was stipulated into evidence as Stipulated Exhibit 4.
10. Plaintiff's time sheets from defendant-employer were stipulated into evidence as Stipulated Exhibit 5.
11. The job contact log for plaintiff was stipulated into evidence as Stipulated Exhibit 6.
12. The issues before the Commission are: (i) whether plaintiff has been disabled as result of her back injury since March 26, 2000; (ii) whether plaintiff's claim for depression, stress and anxiety are related to her back injury; (iii) whether plaintiff contracted a compensable occupational disease arising out of her employment with defendant-employer; (iv) what compensation, if any, is due plaintiff; and (v) whether plaintiff is entitled to permanent partial disability as result of her back injury.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years old, was married and had a son. Plaintiff completed high school, community college courses and received a undergraduate degree in Sociology.
2. Plaintiff was a group home manager for Durham County. On March 26, 2000, plaintiff sustained an admittedly compensable injury by accident to her back while assisting a resident from a wheelchair onto the resident's bed.
3. Plaintiff immediately reported the accident to her supervisor and within a couple of days was referred for treatment to Aaron Miller, M.D.
4. Dr. Miller examined plaintiff and determined plaintiff had an acute lumbar strain and placed plaintiff on light-duty restrictions.
5. Dr. Miller treated plaintiff from March 2000 until the end of May 2000 when he referred her to Dr. William Somers at Triangle Orthopedics. Dr. Miller never took plaintiff out of work as result of her March 26, 2000 injury by accident. Plaintiff worked under restrictions while under the care of Dr. Miller.
6. On June 13, 2000 plaintiff began treatment with William Somers, M.D. Dr. Somers recommended an MRI. The MRI indicated plaintiff had early degenerative disc disease and minimal bulging at L4-5.
7. Plaintiff remained on light-duty restrictions of a 40 hour workweek with no lifting over 25 pounds
8. Dr. Somers continued to provide care for plaintiff, recommending physical therapy and possible epidural steroid injections.
9. On August 8, 2000 Dr. John Giusto, a physiatrist, examined plaintiff and determined plaintiff had lumbar disc disease and possible radiculitis at L4. Dr. Giusto recommended epidural steroid injections. The first epidural steroid injection was administered on August 11, 2000. Since he knew plaintiff was not working at the time, Dr. Giusto did not address plaintiff's working ability.
10. Dr. Guisto saw plaintiff on September 12, 2000 and indicated she had improved after her injection. Dr. Guisto noted that since August 8, 2000 plaintiff had been unable to work at her job with Durham County because of the physical demands of dealing with the residents.
11. On February 26, 2001 Michael Gwinn, M.D., evaluated plaintiff and determined she was at maximum medical improvement. Dr. Gwinn assigned plaintiff a three percent permanent impairment rating to the back as the result of her March 26, 2000 injury.
12. On March 20, 2001 Dr. Guisto found that plaintiff was at maximum medical improvement and gave her a seven percent impairment rating to her back. He assessed permanent restrictions of no lifting of greater than twenty-five pounds, no repetitive bending and no standing or walking for more than thirty minutes without a break or change of position.
13. While plaintiff was being treated by Dr. Somers and continuing to work, plaintiff began treatment with Patricia Ramsey, who has a Ph.D. in social work. Dr. Ramsey treated plaintiff for stress allegedly related to her job and took plaintiff out of work as of June 28, 2000. Plaintiff was placed on medical leave.
14. Dr. Ramsey treated plaintiff for a period of months and diagnosed plaintiff as having adjustment disorder with anxiety and depression. Plaintiff complained to Dr. Ramsey of working excessive numbers of hours, sometimes as many as 14 hours a day; of working double shifts when other employees failed to report for work; and of being on call even when she was not working, so that it was difficult to get adequate sleep or rest.
15. Plaintiff last saw Dr. Ramsey in January 2001. Dr. Ramsey never released plaintiff to return to work.
16. The facility where plaintiff worked had been managed by Durham County but was undergoing changes in its operations at the time of plaintiff's injury by accident. Plaintiff was notified in February or early March 2000 that Durham County was turning the operation of the facility over to VOCA Corporation on June 30, 2000. Plaintiff was notified that she could lose her job with Durham County unless she chose to remain at the group home with VOCA as her employer.
17. Initially, plaintiff notified Durham County that she intended to become a VOCA employee. However, plaintiff chose not to apply for work with VOCA and on June 27, 2000 plaintiff informed Durham County that she wished to remain a County employee.
18. Plaintiff's employment with Durham County ended on June 30, 2000 due to a reduction in force. Plaintiff has looked for work since that time but has been unable to obtain employment.
19. Prior to the termination of her employment, plaintiff was never taken out of work for her back injury by any of her treating physicians. Dr. Somers indicated he had never taken plaintiff out of work and that she was capable of performing her job duties within the restrictions he prescribed.
20. While Dr. Guisto did take plaintiff out of work on September 12, 2000, Dr. Guisto did not base the decision on a physical exam of plaintiff or consideration of plaintiff's job duties. Dr. Guisto relied solely on plaintiff's statements that she was physically unable to perform the job as the basis for taking her out of work. Dr. Guisto also was under the assumption plaintiff had been taken out of work since June 2000 as result of her back condition and not due to the alleged stress for which Dr. Ramsey actually removed plaintiff from work.
21. Plaintiff contends that her stress and anxiety were the result of excessive overtime and on call duty. Dr. John Kallianos, an internist and plaintiff's family physician, indicated he believed plaintiff's stress was caused by her work. The evidence of record shows that plaintiff worked 51 hours during the week of April 9, 2000, 48.3 hours for the week of April 30, 2000, and 64 hours for the week of May 7, 2000. However, a review of her timesheets indicates that plaintiff worked an average of 40.4 hours a week during the period of April 9, 2000 through July 2, 2000. Dr. Kallianos was unaware that plaintiff was also experiencing stress as a result of a physically and verbally abusive relationship with the father of her son, as well as her son's health problems.
22. Plaintiff was physically able to perform her regular job with defendant-employer after her injury by accident on March 26, 2000. Plaintiff did not have any reduction in wages as a result of her injury by accident and there is no indication she was unable to continue to work.
23. Plaintiff would have been able to continue working in her regular job had it not ended as result of the reduction of force on June 30, 2000 and if she had not been taken out of work for the stress disorder by Dr. Ramsey.
24. Plaintiff failed to prove by the greater weight of the evidence that plaintiff's stress condition was related to or caused by her compensable back injury.
25. Plaintiff failed to prove by the greater weight of the evidence that plaintiff's job with defendant-employer placed her at an increased risk of developing an adjustment disorder with anxiety and depression.
26. Plaintiff failed to prove by the greater weight of the evidence that her claim for stress, anxiety and depression is an occupational disease and not an ordinary disease of life to which the general public not so employed is equally exposed.
27. As a result of the compensable injury by accident, plaintiff has a five percent permanent functional impairment to her back.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to her back on March 26, 2000. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury by accident, plaintiff is entitled to receive compensation for the five percent permanent functional impairment to her back at the rate of $342.00 per week for a period of 15 weeks. N.C. Gen. Stat. § 97-31(23).
3. Plaintiff is entitled to have defendant pay all medical expenses incurred or to be incurred by plaintiff as result of her injury by accident on March 26, 2000. N.C. Gen. Stat. § 97-25.
4. Plaintiff's stress condition, anxiety and depression are not causally related to her compensable injury by accident. N.C. Gen. Stat. § 97-2(6).
5. Plaintiff has failed to prove by the greater weight of the evidence that she has contracted an occupational disease due to causes and conditions characteristic of and peculiar to her employment with defendant-employer that is not an ordinary disease of life to which the general public not so employed is equally exposed. N.C. Gen. Stat. § 97-53(13). The stress of working overtime and being on call can occur with any employee in any industry or profession, and therefore plaintiff's conditions do not meet the requirement of "characteristic of and peculiar to" her employment. Woody v. Thomasville Upholstery, Inc.,
___ N.C. ___, ___ S.E.2d ___, 2002 N.C. Lexis 423 (filed May 10, 2002).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff permanent partial disability compensation for her five permanent disability to her back at a rate of $342.00 per week for 15 weeks. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee awarded below.
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to her back.
3. A reasonable attorney's fee of twenty-five percent of compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel.
4. Under the law, plaintiff's claim for additional benefits for an occupational disease must be and the same is HEREBY DENIED.
5. Defendant shall pay the costs.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER